UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____ :
                                  :
UNITED STATES OF AMERICA          :
                                  :    Crim. No. 18-292 (NLH)
     v.                           :
                                  :
YANGIL PAULINO,                   :    **OPINION**
                                  :
          Defendant               :
_____ :


**<u>APPEARANCES</u>**:

PATRICK BRACKLEY
COUNSEL NOT ADMITTED TO USDC-NJ BAR
233 BROADWAY
THE WOOLWORTH BUILDING
SUITE 801
NEW YORK, NY 10279

     *Counsel for Defendant*

ANDREW B. JOHNS
OFFICE OF THE U.S. ATTORNEY
401 MARKET STREET - 4TH FLOOR
CAMDEN, NJ 08101

     *Counsel for the United States*


**<u>Hillman</u>, District Judge**

     Before the Court are Yangil Paulino's ("Defendant") First

Motion for Release from Custody [Dkt. No. 45], Amended Motion

for Release from Custody [Dkt. No. 46], Motion to Withdraw

Document [Dkt. No. 49], Second Motion for Release from Custody

[Dkt. No. 50], and an additional Motion for Release from Custody

[Dkt. No. 54].  As a preliminary matter, Defendant's Motion to Withdraw Document [Dkt. No. 49] will be granted in that Defendant admits in this motion that the first two Motions for Release from Custody were unexhausted administratively. Therefore, Defendant's First Motion for Release from Custody and Amended Motion for Release from Custody [Dkt. Nos. 45, 46] will be denied as moot.

For the reasons expressed below, Defendant's remaining Motions for Release from Custody [Dkt. Nos. 50, 54] will be denied.

**Background**

Pursuant to a plea agreement, Defendant pleaded guilty to a one-count Information charging him with distribution of MDMA (Ecstasy) on May 16, 2018.  [Dkt. No. 52 at 1].  On December 20, 2018, Defendant was sentenced by the late Honorable Judge Jerome B. Simandle to 50 months in prison followed by a three-year term of supervised release.  [Dkt. No. 40].  Defendant filed his first counseled motion for reduction of sentence on July 1, 2020, without first applying to the Bureau of Prisons ("BOP") for compassionate release.  On the very same day, Defendant's counsel filed an identical motion with an attached exhibit. [Dkt. No. 46].  Counsel then moved to withdraw [Dkt. No. 49] these initial motions after learning that Defendant failed to exhaust his administrative remedies.  [Dkt. No. 52 at 1].

Subsequently, Defendant filed a Second Motion for Release from Custody after applying to the BOP for release [Dkt. No. 50] and renewed this motion on January 5, 2021.  [Dkt. No. 54].

Defendant argues for his release citing generalized concerns of COVID-19 and does not put forth any personal medical conditions.  According to Defendant's brief, he will be eligible for release to home confinement on March 7, 2022.  [Dkt. No. 50 at 1].  The Government filed a letter brief in opposition to Defendant's motions on November 19, 2020 (the "Opposition"). [Dkt. No. 50].

**Legal Standard**

Under the First Step Act, a court may afford a defendant "compassionate release for 'extraordinary and compelling reasons.'"  United States v. Sellers, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)).  Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons ("BOP") to do so on their behalf, give BOP thirty days to respond, and exhaust any available administrative appeals."  United States v. Raia, Civ. No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. Apr. 2, 2020) (citing § 3582(c)(1)(A)). "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial

review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." Sellers, 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(C)(1)(A)).

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." United States v. Pabon, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

**Discussion**

   **1.** **Defendant has satisfied the exhaustion requirements**

Defendant has fully exhausted his administrative rights in this case after applying to Warden Scott Finely of FCI Schuylkill on July 16, 2020. [Dkt. No. 50 at 2]. The warden denied Defendant's request on August 4, 2020. Id. The Government agrees that Defendant has exhausted his administrative remedies [Dkt. No. 52 at 2], as required by the statute.

   **2.** **Defendant fails to establish "extraordinary and compelling" reasons for his release**

In both his August 2020 and January 2021 motions, Defendant argues for his release based on generalized COVID-19 concerns

and the conditions at FCI Schuylkill and FCI Fort Dix.
Defendant also "alternatively seeks modification of his sentence
to supervised release with the condition of home confinement."
{Dkt. No. 50 at 1].  This Court does not have the authority to
grant Defendant's request for home confinement as the Bureau of
Prisons ("BOP") is solely responsible for determining an
inmate's place of incarceration.  See 18 U.S.C. § 3621(b); Moore
v. United States Att'y Gen., 473 F. 2d 1375, 1376 (5th Cir.
1973) (per curiam).  Accordingly, the Court will deny
Defendant's request for home confinement.

    While Defendant has amassed an admirable record of
education and productivity while incarcerated, he offers no
evidence that anything about his personal health would make
COVID-19 more of a concern for him than it is for anyone else
currently incarcerated.  At the time of his August 2020 motion,
Defendant was 33 years old with a body mass index ("BMI") of
29.6, which places him below the threshold level of 30
established by the Center for Disease Control and Prevention
("CDC") to determine obesity.  Id.

    Defendant also argues for his release based on the living
circumstances of his child's mother, who remains committed to
Defendant while he has been incarcerated.  Specifically, "Ms.
Collado reports that Mr. Paulino's availability to care for
their son while in daycare could be critical to her available to

maintain her employment and maximize its financial utility." Id. at 7.  While the Court is sympathetic to Ms. Collado's plight, this too does not make Defendant unique.  Many, if not most, incarcerated individuals leave family members behind who carry the burden of their absence.

Understandably, the Government opposes Defendant's motions and argues that he has not demonstrated "extraordinary and compelling reasons" warranting release.  This Court agrees.  As noted, Defendant's generalized concerns about the COVID-19 pandemic are not unique to his situation, and both FCI Schuylkill and FCI Fort Dix, where he is currently incarcerated, have taken concentrated steps to prevent the spread of the virus and properly vaccinate prisoners and staff.  Currently, there are 7 positive prisoner cases and 5 positive staff cases at Fort Dix, a large institution, which represents a dramatic improvement from earlier in the pandemic.[1]

Furthermore, Defendant fails to put forth a family hardship that would establish "extraordinary and compelling reasons" for a sentence reduction.  Defendant's fiancé (the mother of his child) is neither deceased nor incapacitated and was employed at the time of his motion.  [Dkt. No. 52 at 7].

---

[1] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19, https://www.bop.gov/coronavirus/ (last visited November 9, 2021).

In the renewed motion from January, Defendant again argues for release based upon the conditions of FCI Fort Dix. Again, however, Defendant has not submitted any medical information that would support a finding by this Court of an extraordinary and compelling reason or reasons for his release. Defendant is a young, presumably healthy man with a BMI (at the time of this motion) of 31, just above the CDC's designation of obesity of 30.

The Court takes seriously Defendant's concerns about the effect of COVID-19 on his health and the health of his fellow prisoners and conducts its analysis on whether he has shown "extraordinary and compelling reasons for his release" accordingly. That said, the Court holds that Defendant has not met that standard. Defendant does not present medical conditions of the sort that militate toward release under § 3582(c)(1)(A). FCI Fort Dix's mitigation efforts at controlling the spread of the coronavirus appear to be effective. Over the course of the pandemic, two inmates have died due to the coronavirus, and over 1600 inmates have recovered from positive infections.[2]  Id.

---

[2] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19, https://www.bop.gov/coronavirus/ (last visited November 9, 2021).

Defendant's vaccination status is unsurprisingly unclear, given that the briefing was completed prior to the vaccines being widely available.  However, according to the BOP, 2,067 inmates out of a population of 3,171 have been fully vaccinated.[3] Given the well-established and accepted evidence that the available vaccines are both safe and effective and the availability of the vaccine within BOP for inmates, the Court believes that the vaccination rate inside FCI Fort Dix weighs against Defendant's request for relief.  As for Defendant himself, being vaccinated, absent a compelling reason to decline a vaccine, will greatly increase the chances Defendant will not be infected and if infected will have a mild case.

After a review of the record as a whole, the Court finds that Defendant does not present "extraordinary and compelling" reasons supporting his release.  His personal lack of health issues, his lack of family hardship, and FCI Fort Dix's efforts at controlling the spread of COVID-19, taken together, undermine any finding that this Defendant presents "extraordinary and compelling reasons" for his release.

### 3. <u>3553(a) Factors weigh against Defendant's Favor</u>

---

[3] <u>Id</u>.; <u>see also</u> FEDERAL BUREAU OF PRISONS, FCI FORT DIX, https://www.bop.gov/locations/institutions/ (last visited November 9, 2021)

Even if Defendant could establish extraordinary and compelling reasons for his release, the Court may reduce an inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction.  Here, they do not.

Defendant fails to address, with specificity, any of the § 3553(a) factors. The Government, however, argues that Defendant has failed to demonstrate that he merits release under the factors.  [Dkt. No. 52 at 8].  Defendant pled guilty to a serious crime and was granted leniency by Judge Simandle in being sentenced 20 months below the bottom of the Guidelines range, a sentence that already reflected his family circumstances.  Id.  Defendant agreed in his plea agreement that his sentence "was reasonable," received "safety valve" credit, and fails to put forth any other information that would persuade this Court to rule differently.

Given the large amount of MDMA (over 1.5 kilograms) involved in this matter, a sentence below the Defendant already received will not be sufficient to recognize the serious nature of the crime and provide just punishment, 18 U.S.C. § 3553(a)(2)(A); nor provide adequate deterrence to others, id. at § 3553(a)(2)(B); nor avoid unwarranted disparity with defendants with similar records found guilty of similar crimes given the leniency already shown by Judge Simandle. 18 U.S.C. § 3553(a)(6).

**Conclusion**

For the reasons set forth above, Defendant's Motion to Withdraw Document [Dkt. No. 49] will be granted and the Defendant's First Motion for Release from Custody and Amended Motion for Release from Custody [Dkt. Nos. 45, 46] will be denied as moot.  Defendant's remaining Motions for Release from Custody [Dkt. Nos. 50, 54] will be denied.

An accompanying Order will issue.


Dated: 11/12/2021                    /s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.